# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHAD DAVID CURTIS,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2015

No.  318699
Barry Circuit Court
LC Nos.  12-100122-FH;
LC Nos.  12-100177-FH

Before:  O'CONNELL, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right his convictions following a consolidated trial on the charges brought in these two lower court files.  In docket no. 12-100122-FH, the trial court sentenced defendant to imprisonment of 71 to 180 months and 85 to 180 months for two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(b), 85 to 180 months imprisonment for his conviction of third-degree criminal sexual conduct, MCL 750.520d(1)(e), and 16 to 24 months imprisonment for two convictions of fourth-degree criminal sexual conduct, MCL 750.520e(1)(f).  In docket no. 12-100177-FH, the trial court sentenced defendant to 71 to 180 months imprisonment for his conviction of second-degree criminal sexual conduct.  We affirm.

Defendant was a substitute teacher at Lakewood High School.  He also volunteered in the weight room.  The victims, M.K., K.S., and T.H., were students who used the weight room at Lakewood High School.  At different times, defendant took each of the three victims to the school's training room.  M.K. testified that she went to the training room with defendant in the summer of 2011 to do hip flexor exercises.  On one visit, defendant suggested that he give her a body massage.  During the massage, defendant pulled up M.K.'s sports bra and rubbed her breasts.  On another visit, this one on Labor Day, defendant pulled up M.K.'s sports bra and kissed her right nipple, while also penetrating her vagina with his finger.  T.H. testified that she went to the training room with defendant after she had performed some squats and defendant said that something looked wrong with her hips.  In the training room, defendant lowered her sweatpants, moved her underwear, and rubbed her butt.

K.S. testified that she went to the training room on two days with defendant to do some exercises.  On the first day, defendant rubbed her groin, and his hands went underneath the

-1-

spandex of her shorts. On the second day, defendant rubbed K.S.'s groin and the sides of her butt.

Two other teenagers also testified about defendant's actions. D.K. testified that on numerous occasions defendant asked her to come into an office in the weight room with him; he then rubbed lotion on her body. On her legs, he rubbed up to her underwear line. A.L. testified that one day when she was baby-sitting for defendant's two youngest children and got sunburned, defendant rubbed aloe on her body. He rubbed it on her legs, going up to her underwear line, and on her stomach, going up to her bra. He also rubbed aloe under her bra straps.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that he was denied the effective assistance of counsel when counsel did not object to the trial court's failure to instruct the jury about his right not to testify, to the trial court's inconsistent manner of instructing the jury before each recess, and to the prosecutor's misconduct during closing and rebuttal arguments. Because no evidentiary hearing was held, our review is limited to the facts on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review the trial court's factual findings for clear error and its constitutional determinations de novo. *Id.* "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id.*

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *Id.* at 289-290. A reasonable probability is one "sufficient to undermine confidence in the outcome," *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984), which "need not rise to the level of making it more likely than not that the outcome would have been different," *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004).

Defendant requests that if we do not grant him a new trial on his claims for ineffective assistance of counsel, we remand for an evidentiary hearing to allow him to establish a record of the facts that support a claim for ineffective assistance of counsel. See *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973). Defendant makes no argument that the trial court abused its discretion in denying his request for an evidentiary hearing. See *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). Moreover, defendant does not state what facts need to be developed to support his claims. We deny the request.

### A.

Defendant argues that defense counsel was ineffective for not requesting that the trial court instruct the jury that he had a right not to testify and that the jury could not consider the fact that he did not testify, see M Crim JI 3.3. On the last day of trial, after defendant informed the trial court that he would not testify, the court addressed defendant, indicating that it knew

defendant was aware from defense counsel that it would instruct the jury about his right not to testify. Defendant agreed with the trial court's statement. The trial court's instructions to the jury, however, did not include M Crim JI 3.3. At a bench conference at the conclusion of the instructions, the trial court was informed that it had failed to instruct the jury about the evidence of defendant's character. It then gave the instruction on character evidence. At the hearing on defendant's second motion for a new trial, the trial court concluded that defense counsel's failure to request at the bench conference that the jury be instructed about defendant's right not to testify was trial strategy.

To show that counsel's performance fell below objective standards of reasonableness, a defendant must overcome the strong presumption that counsel's decisions constituted sound trial strategy. *Armstrong*, 490 Mich at 290. Counsel is given wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case. *Unger*, 278 Mich App at 242. A court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Id*. at 242-243. The failure to request a cautionary instruction may be consistent with trial strategy. See, e.g., *Lakeside v Oregon*, 435 US 333, 339-340; 98 S Ct 1091; 55 L Ed 2d 319 (1978).

A defendant has a constitutional right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17; *People v Bassage*, 274 Mich App 321, 324; 733 NW2d 398 (2007). The purpose of an instruction that a defendant has a right not to testify and that a jury may not consider the fact that a defendant did not testify is "to remove from the jury's deliberations any influence of unspoken adverse inferences." *Lakeside*, 435 US at 339. But such an instruction is not mandatory, unless requested by the defendant. *Id*. at 340; *People v Hampton*, 394 Mich 437, 438; 231 NW2d 654 (1975). This Court has recognized that some attorneys prefer that the instruction not be given. *People v Abernathy*, 29 Mich App 558, 561; 185 NW2d 634 (1971).

The trial court's conclusion that defense counsel's failure to request the instruction about defendant's right not to testify was trial strategy at the bench conference is contrary to what defense counsel said at the hearing on defendant's first motion for new trial. The trial court did not accept defense counsel's statement as true because it believed no "seasoned attorney" who had been practicing law for more than 40 years could miss the absence of the instruction. But, just as inexperience is not enough to conclude that counsel acted deficiently, *People v Kevorkian*, 248 Mich App 373, 415-416; 639 NW2d 291 (2001), neither is experience alone enough to conclude that defense counsel's actions were not deficient. Based on the record before this Court, we conclude that the trial court clearly erred in finding that defense counsel's failure to request an instruction about defendant's failure to testify at the bench conference was trial strategy.

We also conclude that defense counsel's failure to object to the omission of the instruction fell below objective standards of reasonableness. *Id*. The trial court stated that it would read an instruction to the jury informing it that defendant had an absolute right not to testify. Thus, the expectation was that the jury would be instructed about this right. Yet, defense counsel did not make sure the instruction was given. In addition, defendant was the only person that could have provided an alternative explanation for what happened in the training room with the three victims. As explained by the United States Supreme Court, a person's natural reaction to a defendant's invocation of the right against self-incrimination is that declining to testify

constitutes a clear confession of crime. See *Lakeside*, 435 US at 340 n 10. None of the other jury instructions specifically explained that the jury was prohibited from making an adverse inference from defendant's exercise of his right not to testify. Moreover, counsel admitted that he erred in not ensuring that the instruction was given.

Nonetheless, there is no reasonable probability that the result of the proceedings would have been different had the jury been instructed as to defendant's right not to testify. *Armstrong*, 490 Mich at 290. Although the jury was not specifically instructed that it could not consider the fact that defendant did not testify, it did receive instructions that precluded it from considering this fact. The court instructed the jury as to the prosecutor's and the defendant's respective burdens, i.e., that the prosecutor was required to prove all the elements of the crime beyond a reasonable doubt and that defendant was not required to prove his innocence or do anything The jury was correctly instructed as to what it could consider in deciding defendant's guilt: the evidence, which only included the witnesses' sworn testimony, the admitted exhibits, and anything else the trial court said was evidence. The trial court never informed the jury that defendant's failure to testify was evidence. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Additionally, neither the trial court nor the prosecutor commented on defendant's failure to testify.[1] Further, the testimony showed a common plan, scheme, or system used by defendant—defendant's touching intimate areas of female teenagers while massaging or rubbing their bodies. Moreover, it is reasonable to infer that defendant touched the victims' intimate parts for sexual purpose when considered with the additional facts that defendant apologized to M.K. and A.L., similarly commenting to both of them about being unfaithful to his wife, and that the training room used was generally locked and had no windows or a video camera. Under these facts, defense counsel's deficient performance in not objecting to the trial court's failure to specifically instruct the jury that it could not consider the fact that defendant did not testify does not undermine confidence in the outcome of the trial. *Strickland*, 466 US at 694. In sum, we cannot conclude that defendant was prejudiced by counsel's deficient performance.

B.

Defendant also argues that defense counsel was ineffective for failing to object when the trial court did not consistently instruct the jurors before each recess that they were not to discuss

---

[1] In Part I.C., defendant argues that the prosecutor improperly commented on his failure to testify when he remarked that no witness contradicted the testimony of the five girls in a meaningful way. But, as discussed *infra*, the remark was a proper comment on the weakness of the defense witnesses' testimony. Defendant also argues that on "no less than thirteen occasions, the prosecution declared that no evidence had been presented to cast doubt" on the testimony of the five girls. Defendant claims by this argument that the prosecutor vouched for the credibility of the five girls and appealed to the jury's sympathy. As will be explained, *infra*, we find that the prosecutor's comments were proper argument as to the five girls' credibility. Defendant presents no legal authority to support that the prosecutor's remarks on the "thirteen occasions" should be viewed as comments on his failure to testify.

the case with anyone, see M Crim JI 2.12, and that they were not to read, listen to, or watch any news reports about the case, see M Crim JI 2.14. Although the parties rely heavily on the "use notes" to the instructions to the support their positions, it was not mandatory to use the model criminal jury instructions at the time of defendant's trial, and they cannot be binding authority. *People v Williams*, 288 Mich App 67, 76 n 6; 792 NW2d 384 (2010). Because the instructions were not binding authority, we find that the use notes also were clearly not binding authority.

During preliminary instructions, after the jury was selected, the jurors were instructed that they were not to discuss the case with anyone. This instruction was not repeated until the third day of trial, when it was given three times. The instruction was also given at the end of the fourth day of trial and before a morning break on the fifth day of trial. Defense counsel's performance did not fall below objective standards of reasonableness when he did not object to the trial court's failure to instruct the jury that they were not to discuss the case with anyone before every recess. Before the jurors heard any testimony, they were aware that they were not allowed to discuss the case with anyone. They were reminded of this prohibition several times throughout trial. Perhaps the very best course of action for defense counsel may have been to request the instruction at each recesses, but the question whether counsel's performance was deficient is not whether it deviated from best practices or most common custom, *Premo v Moore*, 562 US 115, ___; 131 S Ct 733, 740; 178 L Ed 2d 649 (2011). The issue is whether counsel's omissions were outside the range of professionally competent assistance, *Strickland*, 466 US 668 at 690. Because the jurors were informed of their obligation not to speak to anyone about the case before they heard any testimony, and because jurors are presumed to follow their instructions, *Graves*, 458 Mich at 486, defense counsel's performance in not objecting to the trial court's failure to give the instruction at every recess did not fall outside the range of professionally competent assistance or result in prejudice to defendant. *Armstrong*, 490 Mich at 290.

The jurors were also instructed during preliminary instructions that they were not to read, listen to, or watch any news reports about the case. This instruction was repeated at the end of the first, second, third, and fourth days of trial, and before a break on the second day of trial. Thus, the jurors were well aware of their obligation not to read, listen to, or watch any news reports about the case. They are presumed to have followed the instruction. Under these circumstances, defense counsel's performance in failing to require that the jurors be instructed about their obligation to avoid news reports about the case before every recess did not fall below objective standards of reasonableness or result in prejudice to defendant. *Id.*

C.

Defendant claims that the prosecutor repeatedly vouched for the credibility of the five girls during closing and rebuttal arguments and that defense counsel was ineffective for failing to object to the improper remarks. A prosecutor may not vouch for the credibility of a witness nor suggest that the government has special knowledge that a witness is testifying truthfully. *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). But a prosecutor may argue from the evidence and the reasonable inferences that a witness is credible. *Id.*; *People v Bennett*, 290 Mich App 465, 478; 802 NW2d 627 (2010). The prosecutor's challenged remarks are examined in context. *Id.* at 475.

The credibility of the five girls was at issue. Indeed, one aspect of the defense was that the five girls were not credible. Having reviewed the alleged improper remarks in context, we conclude that the prosecutor did not vouch for the girls' credibility. The prosecutor never stated his personal opinion regarding their honesty; he argued that the five girls were credible based on the evidence presented and the emotions and demeanors they displayed: Specifically, the points he made were in respect to the lack of evidence regarding any motive for the five girls to lie, testimony regarding how the girls were treated at school after they spoke with the detective, the specific details they provided about defendant's conduct, the similarity of statements defendant made to different girls, and his observations of the emotions and demeanors of the girls when they testified. Because a prosecutor may argue from the evidence that witnesses are credible, we conclude from our review of the record that the prosecutor's comments were not improper, and any objection to them would have been futile. Defense counsel was not ineffective for failing to make futile objections. *Unger*, 278 Mich App at 256-257.

Defendant also claims that the prosecutor appealed to the jury to sympathize with the five girls when he remarked on the consequences the girls suffered after making their disclosures and that defense counsel was ineffective for failing to object. A prosecutor may not appeal to the jury to sympathize with the victims. *Unger*, 278 Mich App at 237.

In the alleged improper remark, the prosecutor told the jury that after disclosing the incidents involving defendant, the five girls suffered "consequences" and "horrible effects," which included being bullied at school, losing friends, and having to testify in front of the jury and defendant about private things and embarrassing details. When read in context, the prosecutor's remark was not an appeal for sympathy. Before the remark, the prosecutor told the jury that they needed to decide the credibility of the five girls, and one factor in determining a witness's credibility is to look at whether the witness had a reason to lie. The prosecutor then argued that because of the consequences and horrible effects that ensued from their disclosures, the five girls had no reason to lie. The prosecutor was arguing, based on the evidence, that the five girls were credible. The prosecutor's remark was proper, *Bennett*, 290 Mich App at 478; *Howard*, 226 Mich App at 548, and any objection to it would have been futile. Defense counsel was not ineffective for failing to raise a futile objection. *Unger*, 278 Mich App at 256-257.

Additionally, defendant claims that defense counsel was ineffective for failing to object when the prosecutor referred to the testimony of the five girls as "uncontradicted."[2] The prosecutor argued:

> Proof of his guilt can be found from his witnesses, too. No one who testified had any personal knowledge of anything that happened in that training room with those girls. No single witness contradicted anything the girls said in any real meaningful way at all. No single witness even mentioned [A.L.] or remotely questioned her testimony.

---

[2] Although defendant claims that the prosecutor "repeatedly" referred to the testimony of the five girls as "uncontradicted," he only provides us with one citation to the prosecutor's closing argument.

According to defendant, the remark impinged on his constitutional right to remain silent.

A prosecutor is not permitted to comment on a defendant's failure to testify. *People v Guenther*, 188 Mich App 174, 177; 469 NW2d 59 (1991). No one other than defendant could have provided testimony that contradicted the testimony of the five girls regarding what happened when the charged touching occurred. But this Court has held that a prosecutor's argument that the evidence was uncontroverted or undisputed is not an improper comment on the defendant's right not to testify even if the defendant was the only person who could have provided contradictory testimony. *Id.*; see also *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). Our Supreme Court has also concluded that a prosecutor may observe that the evidence against the defendant is uncontroverted or undisputed even if the defendant is the only one who could have contradicted the evidence. *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). The propriety of such a comment is dictated by the defense asserted. *Id.* at 115-116. "When a defense makes an issue legally relevant, the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence." *Id.* at 116.

We conclude that the prosecutor's remark was not improper. Defendant presented numerous witnesses at trial. Several of his witnesses testified that he had a reputation as being a law-abiding citizen, a truthful and honest person, and a sexually moral man. Other witnesses, who were past and former students at Lakewood High School, testified that they saw no inappropriate behavior by defendant. The prosecutor did not specifically state that the testimony of the five girls was uncontradicted. Rather, he stated that because none of defendant's witnesses had any personal knowledge about anything that happened in the training room, the testimony of defendant's witnesses did not meaningfully contradict anything the five girls said. Viewed in context, we conclude that the prosecutor's remark was a comment on the weakness of the evidence defendant presented. *Fields*, 450 Mich at 116. Because the prosecutor's remark was proper, defense counsel was neither ineffective for failing to object to it nor required to futilely object. *Unger*, 278 Mich App at 256-257.

## II. RIGHT TO PRESENT A DEFENSE

Defendant argues that the trial court denied him his right to present a defense when it excluded testimony from a fellow student that D.K. had falsely claimed that she was kissed by her soccer coach and when it prevented him from asking M.K. about a statement she made to the detective that D.K. had "cried wolf" before. He argues that his right to present a defense was further restricted when the trial court precluded Katherine Keefer Okla, an expert witness, from testifying about specific conduct of the three victims. Defendant's constitutional claim is unpreserved because it was not presented to the trial court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved claims of constitutional error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A criminal defendant has a constitutional right to present a complete defense. *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). Few rights are more fundamental than the right of a defendant to present evidence in his own defense. *Unger*, 278 Mich App at 249.

Regardless whether the trial court erred in excluding any evidence, defendant was not clearly and obviously denied his right to present a defense. The defense was generally two-pronged: (1) the five girls were lying or mistaken about what occurred, and (2) defendant did not touch them for a sexual purpose. Through both the direct testimony of his witnesses and the cross-examination of the prosecution's witnesses, defendant presented the two prongs of his defense to the jury. Defendant's witnesses included: (1) past and present students at Lakewood High School who testified that they saw no inappropriate conduct by defendant; (2) people who had known defendant for several years and testified that defendant had a reputation as a law-abiding citizen, an honest and trustworthy person, and a sexually moral man; (3) Candace Love, an expert in certified massage, who testified that she would rub a client's gluteal region if the client complained of soreness in the knee or lower back; and (4) Okla, whose testimony on general principles regarding adolescent psychology, forensic interview techniques, patterns of disclosure, and memory and suggestibility suggested that actions of the five girls were not consistent with those of people who were abused and that their memories may have been influenced and changed. In addition, on cross-examination of other witnesses, defendant elicited testimony that highlighted actions by the five girls that may be seen as inconsistent with their being abused by defendant. For example, M.K. had been playful with defendant after Labor Day, and there were other inconsistencies between prior statements the five girls had given and their trial testimony. He also elicited testimony from N.B., a student at Lakewood High School, that defendant did not appear shocked when N.B. walked into the training room and saw him and K.S., as well as from Brian Williams, the principal of Lakewood High School, that T.H. did not appear distressed when he walked into the training room and saw defendant and T.H. The excluded evidence went to the two aspects of the defense. Because defendant presented evidence that would have provided him a complete defense if believed and accepted by the jury, defendant was not denied his right to present a defense. *King*, 297 Mich App at 474. The exclusion of the evidence at issue, even if erroneous, did not result in a plain violation of defendant's constitutional right. *Carines*, 460 Mich at 763.

## III. SENTENCING

Defendant argues that his sentences are invalid pursuant to *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013) because the facts that the trial court used to score offense variables 4, 8, and 10 were not submitted to the jury and proved beyond a reasonable doubt. This Court has held that *Alleyne* does not apply to Michigan's sentencing guidelines. *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013). We are required to follow the *Herron* holding. MCR 7.215(J)(1). Defendant is not entitled to be resentenced.

## IV. CUMULATIVE ERROR

Defendant claims that the cumulative effect of defense counsel's deficient performance throughout trial and the trial court's deprivation of his right to present a defense entitles him to a new trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Only actual errors are aggregated to determine their cumulative effect. *People v Rice (On Remand)*, 235

Mich App 429, 448; 597 NW2d 843 (1999). In this case, we find that there is no cumulative effect of errors meriting reversal. *Id*.

We affirm.

/s/ Peter D. O'Connell
/s/ David H. Sawyer
/s/ Jane E. Markey